## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FISHERIES SURVIVAL FUND**<br>**2 Middle Street**<br>**Fairhaven, MA 02719,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**THE HONORABLE CARLOS GUTIERREZ,**<br>**in his official capacity as the Secretary of Commerce,**<br>**United States Department of Commerce**<br>**1401 Constitution Avenue, N.W.**<br>**Washington, D.C. 20230**<br><br>     **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)  **Civil Action No. ____**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Dated: May 13, 2007

David E. Frulla
D.C. Bar No. 414170
Shaun M. Gehan
D.C. Bar No. 483720
Kelley Drye & Warren LLP
3050 K Street, N.W. – Suite 400
Washington, D.C. 20007
Telephone: (202) 342-8400
Facsimile: (202) 342-8451

**Attorneys for Plaintiff**

## INTRODUCTION

1.      Plaintiff, Fisheries Survival Fund ("FSF"), brings this action to challenge one element of the National Marine Fisheries Service ("NMFS") final rule implementing Amendment 11 to the Atlantic Sea Scallop Fishery Management Plan ("Amendment 11") set forth in the Federal Register, at 73 Fed. Reg. 20089 (April 14, 2008).

2.      The Defendant Secretary of Commerce, by and through his designees at NMFS, administers the Atlantic scallop fishery, along with other federally-managed fisheries, principally under the authority of the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. §§ 1801-1884 ("Magnuson-Stevens Act" or "MSA").

3.      FSF is an organization whose participants include approximately 200 "Limited Access" full-time Atlantic scallop fishing permit holders.  FSF was formed in 1998 to address issues of Atlantic sea scallop conservation and management, at a time when significant new conservation measures, with major adverse economic consequences, were being prescribed to rebuild the scallop fishery.

4.      FSF has been active since its inception in the federal scallop management process, conducted by the New England Fishery Management Council ("NEFMC" or "Council") and Defendant's designees at the National Marine Fisheries Service ("NMFS"), a sub-agency of the National Oceanic and Atmospheric Administration.

5.      In addition to participating in the fishery management process, FSF has worked with its academic and other research partners to conduct cooperative research and other scientific initiatives on, among other matters, scallop abundance surveys, benthic habitat mapping and delineation, and reduction of fish and sea turtle bycatch.

**COMPLAINT FOR PRELIMINARY INJUNCTIVE AND DECLARATORY RELIEF- Page 1**
DC01/FRULD/337842.1

6.    FSF has also, from time to time, defended the Limited Access full-time scallop fleet's interests in litigation relating to the management process, almost always as a defendant-intervenor on the side of the Secretary and NMFS.

7.    Amendment 11, the management action at issue, involves the development of an "individual transferable quota" (or "ITQ") system for what is known as the "General Category" sector of the Atlantic scallop fishery.  The General Category is a separate sector of the scallop fishery from the Limited Access sector in which FSF's participants principally operate.

8.    In general, Amendment 11 established a series of landings-based qualification criteria for a vessel's continued participation in the General Category, as well as an overall permanent allocation to the General Category of five percent of the total allowable Atlantic scallop catch, following a period of transition of General Category management to the new Amendment 11 ITQ system.

9.    FSF and its participants support Amendment 11 and its implementing regulations as long over-due, except, however, FSF is constrained to bring this action to challenge one element of Amendment 11: the potentially indefinite nature of a ten percent allocation of the overall scallop catch to the General Category during the transition from the current General Category open access system to the Amendment 11 ITQ system.

10.    In contrast, pursuant to its authority under the Magnuson-Stevens Act, 16 U.S.C. § 1852(h), the New England Fishery Management Council, recommended to the Secretary that this transitional period last no longer than two years.

**PARTIES**

11.    Plaintiff FSF is a non-profit association organized in 1998 to advance and protect the interests of full-time Atlantic sea scallop fishermen through regulatory advocacy, legal

defense, and cooperative scientific research.  Based in Fairhaven, Massachusetts – the adjacent town to New Bedford, Massachusetts, the Nation's top commercial fishing port in terms of value of landed fish – FSF's participants include approximately 200 full-time Limited Access scallop vessels, home-ported from Massachusetts through Virginia.

12.     Defendant, the Honorable Carlos Gutierrez, is the Secretary of the Department of Commerce.  Defendant, by and through his designees at NMFS, undertook the illegal and unauthorized actions which are challenged in this case.  Secretary Gutierrez is sued solely in his official capacity.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C § 2201 (the Declaratory Judgment Act); 5 U.S.C. §§ 701-06 (the Administrative Procedure Act's judicial review provisions); and 16 U.S.C. § 1855(f)(1) (jurisdictional provisions of the Magnuson-Stevens Act).

14.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."

15.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(e), as the Defendant Secretary of Commerce is an officer of the United States.

## STATUTORY BACKGROUND

16.     The Magnuson-Stevens Act constituted eight regional fishery management councils that serve as relatively unique quasi-legislative bodies charged with developing and recommending fishery conservation and management measures for federal fisheries managed by the Secretary and his designees at NMFS. *See* 16 U.S.C. §§ 1852(a) & (h)(1).

17.    As part of this duty, each council is required to develop fishery management plans and, from time to time, as necessary, any amendments to such plans "for any fishery under its authority that requires conservation and management." *Id.* § 1852(h)(1).

18.    Councils are also empowered concomitantly to develop, often in conjunction with NMFS, "proposed regulations which **the Council deems necessary or appropriate** for the purposes implementing a fishery management plan or plan amendment . . . ." *Id.* § 1853(c) (emphasis added); *see also The Fishing Company of Alaska v. Gutierrez*, 510 F.3d 328,  330-331 (D.C. Cir. 2007).

19.    Councils must submit any recommended fishery management plans, amendments, and implementing regulations they deem necessary and appropriate to the Secretary for review and potential implementation. *See* 16 U.S.C. § 1854(a),(b).

20.    The MSA, however, substantially limits the scope of the Secretary's review of a council's recommendations and substantially constrains his rulemaking authority when confronted with such council-proposed plans, amendments, and proposed regulations.

21.    Specifically, the scope of the Secretary's review authority is limited to a determination whether a proposed plan or amendment "is consistent with the national standards, the other provisions of this Act, and any other applicable law," *id.* § 1854(a)(1)(A), or whether proposed regulations are "consistent with the fishery management plan, amendment, this Act, and other applicable law." *Id.* § (b)(1).

22.    Furthermore, and pertinent to the case at bar, the Secretary does not have statutory authority simply to amend or augment a fishery management council's recommended conservation or management measures or proposed regulations; instead, under the MSA, the Secretary has authority only to disapprove all or part of a plan, amendment, or its implementing

regulations, and then only to the extent that it is inconsistent with "applicable law." *See, e.g., id.* § (a)(3) ("A notice of disapproval shall specify the applicable law with which the plan or amendment is inconsistent; the nature of such inconsistency; and recommendations concerning the actions that could be taken by the Council to conform such plan or amendment to the requirements of applicable law."); *see also id.* § (b)(1)(B) (relating to rejection of proposed regulations).

## REGULATORY BACKGROUND

23.    In 1994, Amendment 4 to the Scallop Fishery Management Plan ("Amendment 4") implemented a "limited access" permitting regime for the scallop fishery.  Pursuant to Amendment 4 and its implementing regulations, a fishing vessel that had the scallop landings history to qualify for, and desired to apply for, a Limited Access scallop fishing permit was able to receive a full-time, part-time, or occasional Limited Access scallop fishing permit.  59 Fed. Reg. 2757 (January, 19, 1994).    In general, the level of a vessel's scallop landings governed whether it was issued a full-time, part-time, or occasional permit.  Each of these three permits allow for a different, and descending, level of Limited Access sector fishing opportunity.

24.    Since 1994, when Amendment 4 was implemented, landings by this Limited Access sector have, on average, accounted for more than 95 percent of all scallop landings on the East Coast.

25.    Amendment 4 did not, however, completely foreclose the ability of fishing vessels which could not qualify for, or did not wish to apply for, a Limited Access scallop permit to fish for scallops.  Instead, such a vessel could apply for a "General Category" permit allowing the vessel to harvest up to 400 pounds per trip of scallops.

26.     The General Category sector of the scallop fishery has continued as an "open access" fishery up until the implementation of Amendment 11. Any vessel, regardless of its landings history for scallops or any other species, can obtain an "open access" General Category scallop fishing permit. In the present day, over three decades since the MSA was enacted in 1976, increasingly few federal "open access" fishing permit systems remain.

27.     When the Amendment 4 Limited Access system was implemented in 1994, scallops were at very low levels of abundance, and few vessels engaged in General Category scallop fishing. Oftentimes, such effort was undertaken in conjunction with fishing for other species in which scallops were occasionally incidentally taken.

28.     However, by the end of the 1990s and into the present decade, the conservation requirements imposed on the scallop fishery to rebuild it from the low levels of the early 1990's had paid handsome dividends.

29.     Today, the Atlantic scallop fishery is fully rebuilt; the scallop fishery is not overfished and overfishing is not occurring.

30.     In conjunction with what turned out to be the unexpectedly rapid success of scallop rebuilding, interest and active participation in General Category scalloping likewise increased. More specifically, 181 general category vessels landed scallops in 1994, but over 600 landed scallops in 2005.

31.     Many of these new General Category participants had never fished for scallops before, and some had never before fished in the New England-Mid-Atlantic region where the Atlantic scallop fishery is prosecuted. Among other reasons, these vessels decided to enter the fishery because near-shore scallop abundance and scallop market prices were both at high levels,

and also because it was the turn of other fisheries to endure the conservation cut-backs the scallop fishery had already endured.

32.    As a result, the percentage of total landings by general category vessels increased from under two percent in 1996 to fourteen percent in 2005.

33.    FSF strongly supported the development of a system of controls on qualification and fishing effort in the General Category sector, as the unconstrained level of General Category fishing was pushing the scallop fishery toward overfishing. In addition, scallop yields and abundance, particularly in near-shore areas, were declining.

## FACTUAL ALLEGATIONS

34.    On June 20, 2007, the Council took final action on Amendment 11, voting to make a series of recommendations to the Secretary for elements to be included in the amendment and to be enacted through any necessary or appropriate implementing regulations.

35.    Among other things, Amendment 11 established a qualification period, such that, in order to qualify for continued participation in the General Category fishery, a General Category permit holder must be able to demonstrate at least a minimum level of scallop fishing during a prescribed qualification period.

36.    Amendment 11 and its implementing regulations' effect will, in general, be to limit future participation of individual General Category permit holders in the scallop fishery to those who meet the Amendment 11 qualification requirements.

37.    Amendment 11 also created a program that will allocate to each qualifying General Category participant a fixed percentage of the overall amount of scallops allocated each year to the General Category. As explained above, such an individual allocation of a fixed percentage of scallops is termed an "individual transferable quota" or "ITQ."

38.    Each qualifying permit holder's ITQ is to be based on a formula contained in Amendment 11 that takes into account the amount of scallop landings that permit holder can demonstrate, based on NMFS records, during each respective year of the qualifying period.

39.    Each General Category ITQ holder will be able to fish its percentage of the overall General Category allocation or convey the rights to do so to other qualified permit holders.

40.    Amendment 11 has created a permanent allocation between the Limited Access and General Category sectors of the scallop fishery.  For its part, the General Category is to receive 5% of the overall scallop total allowable catch ("TAC") level.  As explained above, such a five percent allocation exceeds the percentage of overall landings by the General Category in most years since Amendment 4 was implemented in 1994.

41.    Significantly, however, Amendment 11 has provided for a transition period during which the Defendant's designees at NMFS will initiate and implement this new Amendment 11 ITQ management system for the General Category.

42.    More specifically, during the transition period, NMFS will need to determine which of the many General Category permit holders qualify for continued participation in the ITQ fishery, and then what each qualifier's percentage ITQ share should be.  NMFS allows a series of administrative and judicial appeals to these qualification and allocation determinations.

43.    Pursuant to its authority under the Magnuson-Stevens Act to recommend management measures to the Defendant Secretary for implementation, by and through his designees at NMFS, the New England Fishery Management Council recommended that the transitional allocation to the General Category be ten percent of the overall scallop TAC, as opposed to the long-term five percent allocation.

44.     Central to this action, however, the Council recommended that the transitional allocation of ten percent to the General Category last for no longer than two fishing years, 2008 and 2009.  A scallop fishing year begins on March 1 and runs to the last day of February the following year.

45.     The Council, by and through its Scallop Oversight Committee, confirmed its intent for no more than a two-year transition allocation of ten percent to the General Category in a letter to the Defendant's designees commenting on the proposed rule for regulations implementing Amendment 11.

46.     In fact, the Council anticipated that it would only take one year to implement the Amendment 11 program.  For example, when it promulgated its recommendations for the scallop catch specifications for the 2008 and 2009 fishing years in a separate management action named Framework 19 to the Scallop Fishery Management Plan, the Council presumed that Amendment 11 would be in place by March 1, 2009, and, accordingly, made its recommendations for catch levels between the various sectors for fishing year 2009 based on a five percent allocation to the Amendment 11 ITQ sector.

47.     Moreover, the analysis supporting Amendment 11 did not analyze or consider the economic or fishery impact of an essentially open-ended allocation of ten percent to the ITQ fishery for either 2009 or beyond.

48.     Despite the Council's recommendation of no more than a two year transition period, NMFS promulgated a final rule for Amendment 11 which allows for an indefinite extension of the transitional allocation of ten percent of the scallop resource  to the General Category until the Amendment 11 ITQ program is fully implemented.  *See* 73 Fed. Reg. at 20124 (50 C.F.R. § 648.53(a)(8)) ("For the 2008 fishing year, and 2009 fishing year, **and beyond, if**

**the IFQ program is not implemented as specified in paragraph (a)(7) of this section**, the TAC for IFQ scallop vessels shall be [ten percent].") (emphasis added).

49.    On information and belief, NMFS drafted the Amendment 11 implementing regulations.

50.    Moreover, at no time did the Council deem any regulations inconsistent with its recommendations as to the duration of the transitional allocation period to be "necessary and appropriate."

51.    FSF is harmed by the Secretary's unlawful actions, and will continue to be harmed unless this Court enters the relief specified below.

52.    More specifically, extension of the ten percent allocation to the Amendment 11 IFQ sector beyond that which the Council had recommended would have demonstrable negative impacts on FSF participants in the full-time Limited Access fishery.   Rather than receiving allocations of individual shares of the overall quota, these Limited Access vessels are all granted a set number of days-at-sea ("DAS") each year during which they can harvest scallops in areas generally open to scallop fishing, as well as the right to harvest fixed amounts of scallops from specially managed "access areas" of high scallop abundance.    Higher allocations to the Amendment 11 IFQ sector reduce the amount of fishing opportunities FSF participants have.

53.    For instance, if the Amendment 11 program is not implemented by March 1, 2009, NMFS is proposing to reduce the number of "open area DAS" for the full-time, limited access fleet from 42 to 37, 73 Fed. Reg. 14748, 14761 (March 19, 2008) (50 C.F.R. § 648.53(b)(4)), representing a significant loss of fishing opportunities and income.    Similar impacts would be anticipated in subsequent years, but have yet to be determined because the Council sets TACs and allocates DAS on a biennial basis.

54.    Put differently, if the ten percent transitional quota remains in place, then the limited access fleet will receive five percent less of the total allowable catch for 2009, which is equal to 2,294,989 million pounds of scallops.   At the Amendment 11-projected price of $6.50 per pound ex vessel for scallops, five percent of the scallop yield in 2009 would be $14, 917,429 million ex vessel value to Limited Access permit holders.

55.    Overall scallop allocations are expected to remain approximately the same as the level in 2009 or else increase in fishing years 2010 and beyond.

56.    The Secretary and his designees at NMFS violated the MSA and the Administrative Procedure Act, 5 U.S.C. § 706, when they ignored the New England Fishery Management Council's expressed intent and unilaterally decided to promulgate regulations implementing Amendment 11 that have the effect of making the ten percent transitional allocation to the General Category indefinite, instead of lasting no longer than two years.

## COUNT ONE
### (APA and MSA)

57.    Plaintiff realleges paragraphs 1 through 56 as if set forth in full herein.

58.    The Magnuson-Stevens Act provides that a fishery management regulation shall be set aside if it fails to conform with 5 U.S.C. §§ 706(2)(A), (B), (C), or (D).  See 16 U.S.C. § 1855(f).

59.    The APA, at Section 706(2), proscribes agency action that is:

 (A) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law . . . .

60.    Under the Magnuson-Stevens Act, the New England Fishery Management Council is charged with preparing and submitting fishery management plans and amendments to the Secretary.  16 U.S.C. §§ 1852(a) & (h)(1).

61.    The Magnuson-Stevens Act, at 16 U.S.C. §§ 1852(a) & (h), requires that Councils hold extensive deliberations and public processes.

62.    The Magnuson-Stevens Act also requires that fishery management plans or amendments be subject to notice and public comment and hearing processes.  *See* 16 U.S.C. §§ 1854(a)(1)(B), & 1852(h)(3), (i)(2)(C)-(D).

63.    Fishery management plans or amendments thus promulgated are implemented through "regulations which the Council deems necessary or appropriate" that the Council submits to the Secretary to accompany the plan or plan amendment. 16 U.S.C. § 1853(c)(1).

64.    Once received, the Secretary must determine whether such implementing regulations comply with the Magnuson-Stevens Act and other law, and if so, publish them for comment in the Federal Register.  16 U.S.C. § 1854(b)(1).

65.    The Secretary may not substantially alter the Council's recommended regulations or draft regulations that are inconsistent with recommendations submitted by the Council; rather, the Secretary has limited authority only to make "technical changes . . . for clarity," so long as an "an explanation of those changes" is provided. *Id.*

66.    The regulations drafted to give effect to a plan or amendment developed by a fishery management council must accurately reflect the substance of the plan or amendment as developed and voted on by the council, if the public deliberative function of the quasi-legislative, statutorily-prescribed council system is to be effectuated.

67.     The regulations implementing Amendment 11 and at issue here, set forth at 50 C.F.R. § 648.53(a)(8), represent "regulations," as that term is used in 16 U.S.C. §§ 1853(c), 1854(b), and 1855(f).

68.     The regulations creating the indefinite extension of the ten percent allocation to the Amendment 11 ITQ sector violate the Magnuson-Stevens and accordingly, the APA, because they were not recommended to the Secretary by the New England Fishery Management Council, nor did the Council ever deem them to be necessary and appropriate.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff respectfully seek an Order of this Court:

(a)     Finding the regulations implementing the transitional allocation of ten percent of the overall scallop harvest to the General Category, set forth at 50 C.F.R. § 648.53(a)(8), arbitrary and capricious, an abuse of discretion, and not in accordance with law, and therefore unlawfully implemented, to extent such transitional allocation can extend beyond the 2008 and 2009 scallop fishing years,

(b)     Invalidating the referenced regulation to the extent it prescribes a ten percent General Category transitional allocation that can extend beyond the 2008 and 2009 scallop fishing years;

(c)     Declaring, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that the referenced regulation was promulgated in violation of the APA and MSA for, among others, the reasons stated above, to the extent it prescribes a ten percent General Category transitional allocation that can extend beyond the 2008 and 2009 scallop fishing years;

(d)     Awarding Plaintiff its costs and attorneys' fees as appropriate;

(e)     Granting such other relief as is just and proper.

Dated:  May 13, 2007                          Respectfully submitted,


                                              David E. Frulla
                                              D.C. Bar No. 414170
                                              Shaun M. Gehan
                                              D.C. Bar No. 483720
                                              Kelley Drye & Warren LLP
                                              3050 K Street, N.W. – Suite 400
                                              Washington, D.C.  20007
                                              Telephone:  (202) 342-8400
                                              Facsimile:  (202) 342-8451

                                              Attorneys for Plaintiff

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Fisheries Survival Fund | Honorable Carlos Gutierrez, in his official capacity as Secretary of Commerce |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____88888_____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____N/A_____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

David E. Frulla
Shaun M. Gehan
Kelley Drye & Warren LLP
3050 K Street, NW, Suite 400
Washington, DC 20007
Phone: 202.342.8400

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ A. Antitrust
☐ 410 Antitrust

○ B. Personal Injury/ Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

● C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☒ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ E. General Civil (Other)     OR     ○ F. Pro Se General Civil

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General** <br> ☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment** (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ **895 Freedom of Information Act** <br> ☐ **890 Other Statutory Actions** (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans** (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act** <br> ☐ **720 Labor/Mgmt. Relations** <br> ☐ **730 Labor/Mgmt. Reporting & Disclosure Act** <br> ☐ **740 Labor Railway Act** <br> ☐ **790 Other Labor Litigation** <br> ☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)** <br> ☐ **443 Housing/Accommodations** <br> ☐ **444 Welfare** <br> ☐ **440 Other Civil Rights** <br> ☐ **445 American w/Disabilities-Employment** <br> ☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance** <br> ☐ **120 Marine** <br> ☐ **130 Miller Act** <br> ☐ **140 Negotiable Instrument** <br> ☐ **150 Recovery of Overpayment & Enforcement of Judgment** <br> ☐ **153 Recovery of Overpayment of Veteran's Benefits** <br> ☐ **160 Stockholder's Suits** <br> ☐ **190 Other Contracts** <br> ☐ **195 Contract Product Liability** <br> ☐ **196 Franchise** | ☐ **441 Civil Rights-Voting** (if Voting Rights Act) |

**V. ORIGIN**

⊙ **1 Original Proceeding**    ○ **2 Removed from State Court**    ○ **3 Remanded from Appellate Court**    ○ **4 Reinstated or Reopened**    ○ **5 Transferred from another district (specify)**    ○ **6 Multi district Litigation**    ○ **7 Appeal to District Judge from Mag. Judge**

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
This action challenges a rulemaking involving catch allocations for the Atlantic scallop fishery under 5 U.S.C. 701-06, 16 U.S.C. 1855, and 28 U.S.C. 2201

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | **DEMAND $** N/A <br> **JURY DEMAND:** | Check YES only if demanded in complaint <br> YES ☐    NO ☒ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 5/13/08    SIGNATURE OF ATTORNEY OF RECORD _____

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.